We're going to proceed with the next 10 o'clock case, and that would be the case of Brad Davis v. Dix Drive-Thru v. Village of Dix. And we have Ms. Scanlon Dilken, the appellant, and Mr. David Leggans, the athlete. And Ms. Shelton, you can proceed with your presentation. May it please the Court. Good morning, Your Honors. My name is Jana Yoke, and I represent Brad Davis v. Dix Drive-Thru. Today we're appealing a denial of a liquor license in the Village of Dix. And I'd like to talk to the Court today about three topics. First of all, nothing procedurally has transpired in this case that would prevent this Court from ruling a plaintiff's favor in a way that finds all necessary causes. Secondly, the issues are framed and addressed in this case in a way that includes the complaint as well as the defendant's motion. And finally, the jurisdiction is proper in this Court and is demonstrated by the appending the administrative review proceeding documents to the appendix. And that demonstrates to the Court that nothing prevents this Court from providing all the relief requested by the plaintiff. With regard to the parties and the necessary parties that are bound, and even the issue of the clarification of the parties, that issue was not raised in the trial court, and there was a 2-6-15 motion filed at the trial court, and the issue of whether the individual parties sued in their official capacities needed to be included in the name in the lawsuit was not raised there. And the plaintiff has attempted to preserve that issue on appeal. And it appeared to the plaintiff that the defendant was trying to not raise that issue with the idea that if he lost the parties, the village would be bound, and any attempt to enforce the judgment could be evaded by saying, well, you didn't find the parties. So I wanted that to be clarified on appeal. So I filed a motion addressing an apparent error in the name of the parties, and that was denied. And dictum in that order does not prevent this Court from ruling in the plaintiff's favor. And then the 2-3-62 motion also does not prevent the denial of that motion, which was intended to be heard after this proceeding, does not prevent the ruling in plaintiff's favor. And the majority view is still available to this Court, which would be that the suit against the village of Dix, while preserving the procedural objection, a ruling in favor of plaintiff and against the village of Dix also binds you to individual officers in their official capacity. The reason that you would sue the individual officers in their official capacity is a custom that came out of the 11th Amendment that requires that to be done in order to sue a state. And so you kind of do it out of an abundance of caution. It's not required at the local and county level. And even if this Court adopts the minority view that amendment of the pleadings would be required, that does not foreclose the plaintiff from binding the necessary parties by requesting amendment in the trial court. With regard to the merits of the case provided in the appellant's briefs, the framing of the issues on a de novo basis under Rule 2615 dismissal includes the complaint, the documents appended to the complaint, as well as the motion to dismiss in this case. And the defendant raises a standing issue involving the permissive versus the mandatory nature of the statute, in addition to whether the request for a declaratory judgment that the county is wet is an advisory opinion. And the Court's determination of the entire legal analysis set forth in the appellant's brief is required to determine whether standing is properly alleged in the complaint. The statute is permissive. There's no requirement that the village enact a liquor ordinance construing the liquor license. But there's limitations on the village's power. And so the permissive nature of the statute does not affect the plaintiff's argument that a liquor license is mandatory in this case and the denial of a liquor license based on a reason that's unauthorized by statute is an abuse of discretion. The argument that it's an advisory opinion for a ruling that the county is wet is not consistent with the Declaratory Judgment Act and Illinois law. The trial court necessarily ruled that the county is wet, and that's been conceded by the defendant. And then also the defendant did not cross-appeal that issue. So you're saying since they've conceded it's wet, all you're asking for is that the village has to make some decision that they haven't made yet because the case was not ripe at that time. No. The village has an issue. This is a writ of mandamus petition. To send it back. And the writ of mandamus is properly issued in this case because the mayor had no discretion but to issue the liquor license under the circumstances because at least one liquor license has to be issued if there's a proper application in place. He denied the liquor license based on unauthorized reason, and so that's an abuse of discretion to deny the liquor license. So there's two reasons why mandamus is proper and the liquor license must be issued. He's already made a determination. Exhaustion of administrative remedies has taken place. But the issuance of a license is permissive and not mandatory, right? No. I'm requesting a construction of the statute that construes the last sentence of the provision under the section that authorizes the regulation of liquor by the village. The last sentence of that statute says that the issuance of licenses may not be denied in ways that prohibits the retail sale of alcohol. And the Supreme Court has said the only way to prohibit retail sale of alcohol is to have a referendum. And they're free to have a referendum. Nobody's stopping them from having a referendum. But meanwhile, they have to issue at least one liquor license if one is requested, and it doesn't fall within one of the 21 reasons for denial. And the mayor didn't deny it based on any of those 21 reasons but denied it based on a different reason. And so mandamus is appropriate here. The defendant also raised the issue of whether an ordinance is required prior to the issuance of a liquor license. And that argument comes out of a line of Supreme Court cases, of the Illinois Supreme Court, beginning in 1889 in the Best case. And that line of cases has been superseded by statute. The Best case said that the reason an ordinance is required prior to the issuance of a liquor license is because the legislation at that time did not specify who would issue the license or the length of time the license would be valid or the amount to be paid as a fee or the manner in which it would be paid. When the Illinois legislature enacted the Liquor Control Act in 1934, it addressed all of those issues. The mayor is designated by the legislature as the person who will issue the liquor license. The length of time is specified by the Illinois legislature as one year. The village is given authority to specify a fee and to state the manner of payment of the fee, but that authority is permissive. They're not required to enact that ordinance. And if they don't, that doesn't negate the separate section of the statute that requires the mayor to issue the liquor license. It's a separate, that's a separate determination. So the legislature occupied the field, and that was discussed in the Fairfield case, which is briefed in my appellant brief. And the defendant appears to indicate that the prayer for relief and the complaint that requests that an ordinance be enacted limits the relief available to plaintiffs. And, of course, the rules of civil procedure state that the prayer for relief does not limit the relief available to plaintiffs. And this complaint, written by a local attorney here, was very well done. I thought he did a great job, and nothing in that complaint limits the plaintiff's relief that's requested in this case according to Illinois law. He's entitled to relief pursuant to law, even if the complaint says that they want an ordinance enacted. Well, the ordinance isn't required according to law because it's been briefed by statute, and that took some research to do, and he shouldn't be required to do that research when he's drafting his complaint. Unless he is raised on a 2-6-15 motion, and then there's an opportunity to amend, and that wasn't done here. The final issue I wanted to address was the bifurcation of the proceedings. The Illinois Liquor Control Commission addressed the off-premises aspects of the liquor license and defined jurisdiction as to the on-premises aspects of the liquor license. And so the proceeding became bifurcated into an administrative review proceeding that is still pending in the trial court. That case number is cited in the complaint, and so that proceeding, the documentation of that proceeding, which coincidentally or not coincidentally, is very, very similar to all of the documents attached to the complaint. There is very little attached to that administrative proceeding record that is not also attached to the complaint. But that was provided for the court's review to assure the court that it had jurisdiction to make a determination in this case that was requested by the plaintiff and that the jurisdiction was not proposed. And it's not, because the determination of the entire legal analysis, including whether the county is wet, is required in order to determine whether the complaint alleged scam. With the final few minutes that I have, I would like to address the concept that appears in this case where the defendant appears to be taking a limited view of the rules of civil procedure in a way that tends to take away something from the plaintiff. And in my view, the rules of civil procedure are the purpose of giving and not for taking away. They're for the purpose of protecting the freedom to have a decision on the merits and not for the purpose of preventing a decision on the merits. And when there's a harsh result that's required by failure to follow the rules of civil procedure, it's because of protecting the other party's right to a fair determination on the merits. And reading that in line with keeping those things in mind kind of gives a broader path toward a decision than I think the defendant is viewing here. And there's this fight back and forth in the briefing that you'll see, and that's an undercurrent of our analysis. And so that gives you my view of what the rules of civil procedure are about. And, of course, you can adopt whatever view you have in light of what the defendant is saying. But that's all I have for my argument. I'm willing to answer any questions. Thank you, Michelle, for giving us the opportunity for a rebuttal. Mr. Latham? May it please the Court, Counsel? First, it is necessary to note that this appeal does not involve necessary parties. The appeal does not involve whether the village of Dix is wet or dry. The trial court, for purposes of the motion to dismiss, assumed that the village was wet, and that was a proper assumption by the court. This appeal doesn't involve the denial of the liquor license. It involves the refusal to enact an ordinance to create a liquor license. In addition, this appeal does not involve the administrative proceeding before the Liquor Control Commission. Neither plaintiff's complaint, nor the village motion for involuntary dismissal, nor the trial court addressed these issues. And, therefore, none of the arguments of counsel on those issues are relevant to this appeal. Well, aren't you kind of doing it by the back door, or making it dry by not enacting an ordinance? Is that not a backdoor approach? No, actually, it's a people's approach. They didn't vote on anything, though. Well, they did. They voted on every board of trustees that's been elected since 1984. You say the board voted, but there was never an election. No, the people vote for the board of trustees that govern the village, and the board of trustees at any time. But there never was a general election where there was a vote for it. No. Okay, that's what I'm asking. No. In fact, well, there was an election on a referendum on packaged liquors, which obviously has no relation to this case, which was consumption sales. But the bottom line on the local option referendum, when the Liquor Control Act was enacted, it was a – It's 34, right? Yes, a regulatory scheme. And, basically, it was an empowering ordinance. It gave powers to local governments to do certain things. And they could only do what the statute allowed. In addition, the local – Okay, now what did they do that the statute allowed? Who's that? The village of Dix. Well, the village – that's where I'm headed. The statute says that if local governments want to issue liquor licenses, they may do so by enacting an ordinance determining the number, the classification, and the cost of those. Now, the prohibition part of the statute, and its important distinction, I think, is that the local – or the Liquor Control Act said liquor is not permitted in the state of Illinois. It's also permitted in every municipality in the state of Illinois, in every village. If the people within that particular village don't want liquor under any circumstance, they have the option of enacting an ordinance – I'm sorry, conducting a referendum. And the people vote wet or dry. That's what they didn't do. And that has not been done. Okay. At least for purposes of this motion. But just because people don't vote to be dry doesn't necessarily mean that the village must enact ordinances creating licenses. That's why I asked you about the backdoor approach. Not doing anything is like voting it dry. That's because the statute grants the authority to the village board and the president to – if the people haven't prohibited them from doing so, the board gets to decide whether liquor will be allowed. So in other words, you don't need a referendum is what you're saying. The referendum prohibits the board from acting. If a referendum is passed, the board cannot act. If no referendum has been passed, then the board has discretionary authority under the Liquor Control Act to determine what licenses, if any, they want to issue. And it's true. If the board does not enact ordinances creating licenses, then to the layman's terms, the village is dry. But that doesn't keep the next board from getting elected and deciding they want to elect – if they want to enact ordinances issuing licenses. And that's what I say. If people have decided that the village is dry, it's just that every election, they elect a board of trustees that doesn't want liquor licenses, so they haven't passed any ordinances. The next board could very well decide we're going to issue a liquor license. And if they do so, the board can enact the ordinance and establish its classification, and the village is then wet in the layman's sense. Didn't the trial court find the village was wet in his analysis? Well, the trial court assumed, and I think that was a proper assumption, that the village was wet for purposes of the motion to dismiss because that assumption gets you to the point on the reason the account for declaratory judgment was merely advisory. The request was for the court to declare the village to be wet. Okay? What happens if the court declares the village to be wet? Nothing. It doesn't determine any rights. It doesn't determine rights of the plaintiff, and it doesn't resolve the issue between the parties because under the Liquor Control Act, Section 5-4-1, that statute specifically grants to the president and the board of trustees the right to determine by ordinance or by resolution the number of licenses, whether it be 0, 1, 2, 3, or 50, the classification of the licenses, and, of course, the fees. How can the number be 0? That means there's no license. That just means that the board is elected not to issue licenses. The Supreme Court's case of the Hall case, which I cited in the brief, basically says the Liquor Control Act, in the sign of this exact language, gives the authority to the board, discretionary authority, permissive authority. Determine how many licenses. To determine the number of licenses. And then the number of licenses is 0. Then they haven't determined it. Is that correct? They've determined it to be 0. The statute can be read to mandate when the statute, by its plain language, doesn't say that the municipality or the board of trustees shall create license and that there shall be at least one. It says the local board of trustees should either create licenses or no licenses. No, the statute is permissive. It empowers the board to do certain things. It doesn't require the board to do certain things. It empowers them to do certain things. They're empowered to what? They are empowered to determine the number of licenses without qualification and without exception. And if the people of the village vote for board of trustees members that don't want to issue liquor licenses, they are. That's in the statute. That is the result of the statute. The result. Because the statute, to read it any other way, is to read language into the statute that's not there. And it's also to read it in a way other than the Supreme Court has read it. The Supreme Court has always read the statute to mean that the Liquor Control Act gives the village discretionary authority, which gets you to the second point of the mandamus. Because it's a discretionary act on the part of the board of trustees to enact or not enact an ordinance, the mandamus will not lie to compel the board to enact an ordinance. The court should only order a board to enact an ordinance if there's a statute that says thou shalt enact an ordinance. And there are some election laws, I believe, that require that. In fact, even some of the very, very old liquor cases dealt with that issue where in the old commission form of government, you had to have a referendum depending on the type of ordinance that you enacted. But this statute doesn't require that. This statute, by the Supreme Court decision in the Hall case, by the Silverman case, I think the First District case, the recent case, all those cases hold that the authority to determine the number of licenses and the classification of licenses is purely discretionary, purely permissive, not mandatory. The language is unqualified. And so the language of the statute says by right it leaves the authority to the board. And as a Supreme Court interpretation in a health court case, I'll say it's permissive and discretionary. We maintain it as permissive and discretionary. I agree with you. I believe the analysis is that it is permissive on the board's behalf. But then how does somebody get a referendum when the board has said we're not going to issue a liquor license? Actually, as the trial court pointed out to Mr. Davis, and this is why he had no standing in this case, his remedy isn't to come to the courts and ask the trial judge or this court to overrule the will of the people. His remedy is to go out and petition and seek the election of trustee members who are willing to enact ordinances. So you say it has to be a new board so there could be no referendum. Well, there would only need to be a referendum if the billings were not wet. I mean, I'm sorry. There would only need to be a referendum if the people wanted to vote the billings dry. So if the people wanted to vote the billings dry, then there would need to be a referendum. Now, the reverse is also true. You can also have a referendum to vote it wet if it were dry. But in this case, we're not at that point. The trial court properly assumed that the billings was wet. For purposes of rule of ruling on this motion to dismiss, the court assumed the billings was wet. That's on the basis that there's never been a referendum that's determined to be dry. Correct. So that's what makes it wet. It's wet because when the Liquor Control Act was passed, of course, prior to the time we had prohibition, so what happened in the late 30s is various states started enacting ordinances which authorized the sale of alcoholic liquor and basically set forth the roadmap for local governments to regulate liquor. Now, it was a comprehensive scheme, and it basically told the local governments what they could and couldn't do. And one of the things, if you didn't have a referendum making your town dry, then you were under the actual wet. And again, the voters were the one that could decide if you wanted to be dry under all circumstances. But that statute also gave, if the voters didn't take the decision out of the hand of the Board of Trustees, then the Board of Trustees had the discretion to decide the number of liquor licenses and whether you wanted to have liquor licenses. And obviously, if the board that is sitting doesn't do what you want, not just on liquor but on any issue, you go out and campaign for a new board. Because if enough citizens in the village agree with you, they'll elect a board that shares their views. Now, are we dealing with law of the case here on the village that it's wet? Actually, what we're dealing with essentially is that issue, at least on the issue of consumption sales, hasn't been thoroughly investigated. But I'm standing here representing to you that the village believes itself to be wet with regard to consumption sales. I thought the trial court said that. Well, the trial court assumed, and we stipulated that for purposes of ruling on this motion. So it's in the order that it is wet. Well, the trial court just simply, during the course of his discussion, said, I believe the village of Dix should be wet, and I'm going to assume that it's wet for purposes of ruling on this motion. Because even if the village of Dix is wet, which if it were dry, then we wouldn't be talking about getting licenses issued. So there has to be an assumption that the village of Dix is wet, or we don't need to get to the issue of whether licenses are issued. So are there any licenses? No, because the board has elected not to enact ordinances. So it's a wet village with no licenses. Is that what you're saying? That's what I'm saying. And there can't be because the board voted zero. No, there can't be. The board has the next meeting to enact a liquor ordinance creating a liquor license if they wanted to. But the people in the village don't want a license. Well, now, how can you say that? Because if they did, they'd elect board members who wanted to. Yeah, but they might change their mind. Who might change their mind? The village people. Well, that's not the singing group. No, but it's a democracy in a small town. The village of Dix has, I believe, about 500 people. And if the 500 people in the village of Dix wanted liquor, they'd enact a board that would deal with the issue. But over the years, and, of course, we're outside the record, over the years the issue of liquor has come up. But the board has always taken the position, go serve it. We don't want to have a liquor license in our community. All they're doing is exercising their rights under the statute. The Liquor Control Act says the board of trustees will determine the number of licenses, and they have that right by ordinance to do so. And if they don't do it, they don't enact an ordinance, there are no licenses. Well, see, I have a little problem here with you saying the number of licenses, meaning they don't exist, by saying zero. Well, zero, I guess my point is this. Zero is a number. It is? Yes. I believe it to be. I mean, it basically is the number of it. It's not there? It's none. And the thing is, if the Liquor Control Act intended for municipalities to enact a specific number of licenses, it would have told it to do so. In fact, there are cases where the state statute authorizes licenses such as the Class B license, I believe in the Silverman case. And the plaintiff came in and said the state statute authorizes Class B licenses, and it even says you can't charge more than $250 for the fee. Because the state statute says that, you have to create Class B licenses. The court said no, no, no. The number of licenses are permissive. And whether there is a Class B license is up to the board. Now, that was an appellate court case. Yes, it was. Okay, that's not binding, is it? It wasn't in this circuit, no. Right. But I believe the language of the Supreme Court in all cases, by the way, follows. Now, the Supreme Court is a different story. But it follows decisions back to the early 1900s, which says it's discretionary, not mandatory. It's controlling in this case. And it's not inconsistent with the intent of the Liquor Control Act. The Liquor Control Act tries to move the decision as to local liquor to the local people. And it gives them a veto power if they absolutely don't want it under any circumstance. But it also gives the Board of Trustees the right to decide if the people have it otherwise prohibited. And all that's currently happening is that the Board of Trustees has decided not to create liquor licenses. Now, a little step further, and we're talking the big picture here, but if you get down to this particular plaintiff and this particular case, under no circumstance can or should a court order a village to enact an ordinance creating a specific license for a specific individual. And that's the law if you have 50 licenses. In fact, the Pence case was very clear. The party can't come in and sue them. They don't even have standing. They don't even have standing to sue the village, complaining about the fact that you wouldn't give me a liquor license. So if we deal with the issue on this plaintiff only, he has no standing to come to court and ask the court to direct the village to enact a discretionary ordinance to create him a liquor license. Because aside from whether you want to argue zero is not a number and that you've got to enact one, they don't have to create it for him. On that issue, clearly it's discretionary and permissive. And under that circumstance, declaring the village wet isn't going to have any effect on his rights. It's not going to determine any dispute. It's purely an advisory opinion. And on the mandamus issue, obviously it was a discretionary ordinance, and the court should not be ordering a village to enact an ordinance telling a municipality to create a specific license, like a Class D license, for a specific defendant. The mandamus can't issue. And that's what his case was. It was a two-count complaint, one seeking declaratory judgment that the village is wet, which he thinks requires the village to issue him a liquor license, which is not the law, and the other was mandamus to make the village issue the liquor license. And again, he's not concerned about anything other than a license for him. And, you know, I believe the law can be the same whether we're talking about one particular plaintiff or a group of plaintiffs in terms of the number of liquor licenses. I believe the state statute clearly grants the local board the right to determine that. But even if I give you the argument that you're asserting with your questioning, even if that is correct as to this defendant, I'm sorry, as to this plaintiff, the board does not have to give him a license. They have the absolute discretion to say, we don't want a consumption license. And, for example, the village of Dixon, I indicated, was a population of 500 people. No police force, no inspection department, very few municipal services. There is good reason why a municipality of 500 people would not want to have a liquor license that allowed consumption sales within their village. They are very limited in their ability to regulate crowds, liquor usage, and all the problems that come with it. And we submit that the trial court was correct. First, this individual has an outstanding for the reasons I just covered. Second, the declaratory judgment that the village of Dixon is wet doesn't resolve any issues. It's purely advisory because it doesn't get him any relief, and it doesn't decide the issue as to whether the statute requires him to create a liquor license for him. And, in fact, the trial court ruled that it didn't. And then the mandamus issue, I think, is not predictive, especially by the Supreme Court language. As to this particular complaint, any act that the board wants to enact or not enact, license to create or not create, is purely discretionary, and the courts are not supposed to be, in fact, this very court ruled that in the Rory case, I believe I signed the brief, and in the Silverman case, well, the Rory case was a declaratory judgment case. It was the Silverman case that said, you know, it's purely discretionary, and maybe it shouldn't issue. Thank you. Thank you. Ms. Jochum, you have the opportunity to rebut. According to the defendant, there are two ways to be a dry community under the liquor patrol act. A board, according to him, can decline to enact an ordinance, and they also can do a referendum to vote the town dry. But the Supreme Court stated in the Hall case that was cited by the defendant that a city cannot make regulations which will completely negative the right to sell liquor and retail. Such prohibitions were being limited to certain sections of the act, which must be submitted to the voters of the municipality by referendum. All of the cases that have discussed this issue, including the one cited by the defendant, are cities that already have at least one liquor license. Certainly, they can enact more liquor licenses or fewer liquor licenses, and that's authorized by the statute. The number of liquor licenses allowed is authorized by the statute. But if it's zero, it has to be done by referendum, and the statute also says that in the last sentence that I directed you to. It's also cited on page 11 of my brief. It says the issuance of such licenses shall not be prohibited except for reasons specifically enumerated in sections 6-2, 6-11, 6-12, and 6-25 of this act. That's why mandamus is proper because the mayor denied the license based on a reason other than those specifically enumerated in those sections of the act and also because the action was an action that prohibited the issuance of a license. So there was no discretion and there was an abusive discretion, and so mandamus is appropriate. In this case, the dismissal should be reversed. Do you think, if we agree with you, and I'm not suggesting that that's how we're going to rule, that any license must be issued to your client? Well, in this case, he applied, and he doesn't. There was no reason under those rules. There are 21 reasons why you can deny a license, and none of those reasons apply to him. And the mayor didn't say in his determination that any of those reasons apply to him. Instead, the mayor said, we are denying your license because of this other reason. He could have said, we deny your license because of one of these reasons, but he couldn't also because none of those reasons apply to my client, but he didn't. And that's why it's on administrative review to say he shouldn't have denied it based on the idea that the town is dry because the town isn't dry. The only reason the town can be dry is if it votes to be dry by referendum. So do you agree that if we agree with you that the village is not dry, it is wet, that a referendum is necessary? In order for it to be dry, yes. The confusion arises out of a referendum that took place in 1976 that assumed that the town was dry and voted that the town continue to be dry, and that is completely contrary to the language of the statute. And so that referendum would have been something that if the town had already voted to be dry before Prohibition and if it were dry by reason of laws that were in place at that time and came out and voted to be dry early and they wanted to continue to be dry by referendum, they could use that provision of the statute. And they voted to continue to be dry, but that's not the same thing. That's to them, that was maintaining the status quo. They needed to have, according to the specific language of the statute, there's other language that has to be put in the referendum if you want to be dry. If we're a wet town and we want to be dry, the language is very clear and specific and has to be used that way. So that's the basis of part of the misunderstanding here, but that doesn't mean the town is dry. It means the town is wet as a matter of law, and that's one of the determinations that will be needed out of this court in order to resolve the issues on heel. Are you not finished yet? The Pence case said there was no standing, but they had already issued 12 licenses. The Silverman case said that there was, and Amos was improper, but they already had issued licenses. If there are licenses already issued, the statute is completely discretionary. If there are no licenses issued, alcohol can't be prohibited, and it can only be prohibited by referendum, and the law is clear on that. And there are not two ways to be dry. It can only be dry by virtue of a referendum. It can't be dry by failure to enact an ordinance, and that is set forth in the Fairfield case, which is discussed at length in my brief. Thank you both for your briefs and arguments. We'll take another after the vice-president's ruling.